UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
AUTO-KAPS, LLC,                                             :
                        Plaintiff,                          :   **MEMORANDUM DECISION AND**
                                                            :   **ORDER**
             - against -                                    :
                                                            :   15 Civ. 1737 (BMC)
CLOROX COMPANY,                                             :
                                                            :
                        Defendant.                          :
                                                            :
----------------------------------------------------------- X

**COGAN,** District Judge.

Before me is defendant's motion to disqualify Donald Foster from acting as plaintiff's expert in this litigation, and to strike his affidavit from plaintiff's opposition to defendant's motion for summary judgment. For the reasons set forth below, defendant's motion is granted.

## BACKGROUND

Plaintiff Auto-Kaps, LLC commenced this patent infringement case against Clorox Company alleging that Clorox's sale of its "Smart Tube" bottle infringes U.S. Patent No. 7,490,743 ("the '743 Patent"), entitled "Dispenser Assembly," both literally and under the doctrine of equivalents. The '743 Patent is directed towards a liquid dispenser assembly that facilitates the ability to dispense all of the liquid in the dispenser, and facilitates the assembly of such liquid dispensers. Plaintiff asserts that the Clorox Smart Tube bottle infringes claim 1 of the '743 Patent and certain of its dependent claims.

Clorox moved for summary judgment, prior to the end of discovery, on the basis that a Markman hearing was unnecessary for the Court to hold that, as a matter of law, the Smart Tube bottle does not infringe the '743 Patent. Clorox argued that the Smart Tube bottle does not infringe three limitations contained in claim 1, when those terms are given their plain, ordinary

meaning. In accordance with the all-elements rule, should the Court find that Clorox does not infringe even one of these limitations, the Smart Tube bottle cannot infringe the '743 Patent. See Presidio Components, Inc. v. Am. Technical Ceramics Corp., 702 F.3d 1351 (Fed. Cir. 2012). Specifically, Clorox argued that the Smart bottle does not meet the limitations in claim 1, which state that the dispenser assembly comprises, in relevant part:

1) at least one container passageway mounted on the inner surface of the side wall . . .

2) at least one container passageway . . . extending from the open top of the container to a position proximate to the bottom of the container . . . [and]

3) [a pump cap wherein] the couple arrangement and the mating arrangement are non-circular in shape such that the coupling arrangement and the mating arrangement are coupled only if the container passageway is aligned with the pump cap passageway, such that the container passageway sealingly engages the pump cap passageway in a fluid connection when the pump cap is mounted to the container. . . .

Clorox did not concede that the terms are, in fact, defined by their plain, ordinary meaning; rather, it argued that the Smart Tube bottle does not infringe the '743 Patent even when the terms are given their broadest meaning. At the premotion conference, Auto-Kaps agreed that the Court should, for the purposes of this motion, give the terms in the above limitations their ordinary meaning, and affirmed that industry-specific claim construction was not required to decide Clorox's motion for summary judgment.

Notwithstanding its representation at the premotion conference, Auto-Kaps included, as part of its opposition to the motion for summary judgment, an affidavit by packaging system expert Donald Foster ("Foster"). Foster provided the industry definition of disputed terms and, after comparing the Smart Tube bottle to the '743 Patent, concluded that each of the three disputed limitations of claim 1 were infringed by the Smart Tube bottle. According to Foster's affidavit, he is the owner and President of Tangent Technology Team LLC, a research and

development company involved in designing dispensing systems. Foster himself has more than three decades of experience consulting, designing, developing, and manufacturing dispensing packaging systems and has extensive knowledge in the field, including engineering, patent procurement, and marketing.

As part of his work in the packaging industry, Foster consulted with Clorox on different projects, including the "Starblaster" and "Flash" projects. The Starblaster project involved the design and development of a spray bottle, which includes a blown-in dip tube and a trigger sprayer pump system. The Starblaster project ultimately culminated in the Smart Tube bottle. The Flash project involved a dual chamber trigger sprayer that sprayed two products at the same time. Both chambers in the Flash project bottle design had a dip tube attached to the spray trigger, and the bottle did not have a blown-in dip tube like that found in the Smart Tube bottle.

Clorox now moves to strike the affidavit of Foster and disqualify Foster from serving as Auto-Kaps' expert in the litigation. Clorox argues that Foster's prior consultancy for Clorox involved the technology at issue in the litigation and there is therefore a risk of disclosing, even inadvertently, confidential information.

**DISCUSSION**

As a threshold matter, the parties dispute the law that applies to Clorox's motion to disqualify plaintiff's expert. Although Clorox has applied the test for disqualification set forth by <u>Grioli v. Dental Int'l Mach. Corp.</u>, 395 F. Supp. 2d 11 (E.D.N.Y. 2005), Auto-Kaps argues that, because the contracts entered into by Foster and defendant are governed under California law, so too is the issue of Foster's disqualification. This dispute is largely semantic: The Ninth Circuit has considered the same or similar factors as those considered in the Second Circuit, and the Court's determination in this case would not have changed had it applied the test set forth by

plaintiff in its opposition. Compare id. (applying test which considers the confidential relationship, information disclosed, and public policy concerns) with Hewlett-Packard Co. v. EMC Corp., 330 F. Supp. 2d 1087 (N.D. Cal. 2004) (same).

Nevertheless, a district court applies the law of the circuit in which it sits to non-patent issues and the law of the Federal Circuit to issues of substantive patent law. See In re Cambridge Biotech Corp., 186 F.3d 1356 (Fed. Cir. 1999); Engel Indus., Inc. v. Lockformer Co., 166 F.3d 1379 (Fed. Cir. 1999). However, where a procedural issue is "intimately involved in the substance of enforcement of the patent right," a district court may apply Federal Circuit law. See Amana Refrigeration, Inc. v. Quadlux, Inc., 172 F.3d 852, 856 (Fed. Cir. 1999) (applying Federal Circuit law to issue of personal jurisdiction). Here, the issue of expert disqualification is not unique to patent law, and affects the substance of the enforcement of the patent right only to the extent that any pretrial decision affects its enforcement. Therefore, the law of the Second Circuit guides the inquiry as to whether Foster should be disqualified from acting as Auto-Kaps' expert.

There is no bright line rule as to when a party's expert should be disqualified due to disclosure of confidential information, and the Second Circuit has not set forth the precise test by which a district court should make the determination. However, district courts in this Circuit have typically considered three elements in determining whether an expert should be disqualified due to his relationship with the adverse party. The first two elements concern the relationship between the expert and the party moving to disqualify that expert: courts look to (1) the existence or reasonable expectation of a confidential relationship between the movant and the expert; and (2) whether the movant in fact disclosed confidential information to the expert. See, e.g., Grioli, 395 F. Supp. 2d at 14; Rodriguez v. Pataki, 293 F. Supp. 2d 305 (S.D.N.Y. 2003), aff'd, 293 F.

4

Supp. 2d 315 (S.D.N.Y. 2003); Eastman Kodak Co. v. Agfa-Gevaert N.V., No. 02-CV-6564, 2003 WL 23101783 (W.D.N.Y. Dec. 4, 2003); Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc., No. 95 CIV. 8833 (RPP), 2000 WL 42202 (S.D.N.Y. Jan. 19, 2000). To the extent the nature of the disclosures is disputed, courts also consider whether the confidential information revealed is relevant to the current litigation. See Eastman Kodak Co. v. Kyocera Corp., No. 10-CV-6334CJS, 2012 WL 4103811 (W.D.N.Y. Sept. 17, 2012); Agfa-Gevaert, 2003 WL 233101783, at *1. Lastly, courts in this Circuit have considered, as a third element, the public's interest in preserving judicial integrity and fairness as balanced against the party's right to the assistance of experts who possess specialized knowledge and the right of such experts to pursue their professional calling. See, e.g., Grioli, 395 F. Supp. 2d at 14. The burden is on the party seeking disqualification to establish these elements. Id.

The facts surrounding Foster's consultancy with Clorox and the information disclosed are largely undisputed. Foster consulted with Clorox from approximately April 2009 to March 2011. During the time that he consulted on the Starblaster project, Foster reviewed and provided designs to integrate trigger sprayers from different third party vendors onto a bottle that has a blown-in dip tube. One such bottle was a bottle having an externally molded blown-in dip tube. This bottle design predated the Smart Tube bottle, but the Smart Tube bottle also contains a blown-in dip tube. Although Clorox did not use any of Foster's trigger sprayer designs, he also reviewed and performed functional testing of multiple trigger sprayers, including the trigger sprayer ultimately utilized in the Smart Tube Bottle.

Auto-Kaps does not dispute that Foster and Clorox had a confidential relationship, or that confidential information was disclosed to Foster in the course of his work on both the Starblaster and Flash projects. However, the parties do dispute the nature of the disclosures made during the

5

course of the Starblaster project, and their import to this litigation. Auto-Kaps' argument to this point is two-fold: first, it argues that Foster did not disclose any confidential information in this litigation; second, Auto-Kaps argues that Clorox has not shown that the information Clorox disclosed to Foster is relevant to the litigation. In addition, Auto-Kaps argues that public policy weighs against disqualifying Foster as an expert.

### A. Foster's Alleged Non-Disclosure of Confidential Information

Auto-Kaps first argues that Foster has not disclosed confidential information during the course of this litigation. Foster states in his affidavit that "[n]one of the limited confidential information shared with [him] by Clorox helped or enabled me to compare" the Smart Tube bottle to the '743 Patent. On a motion to disqualify, however, the inquiry is not into what confidential information the expert has disclosed, but what was disclosed to him. The moving party must not wait for the expert to disclose confidential information before challenging an adverse party's use of the expert; at the point the information is disclosed, the moving party would have already been unfairly prejudiced in the litigation. The disqualification of an expert is not to provide a remedy or punishment for a confidential disclosure, but to prevent the "risk of prejudice from possible disclosure" and the "fundamental unfairness" that would arise as a result. Gordon v. Kaleida Health, No. 08-CV-378S F, 2013 WL 2250506, at *6 (W.D.N.Y. May 21, 2013); see also Pellerin v. Honeywell Int'l Inc., No. 11CV1278-BEN CAB, 2012 WL 112539, at *3 (S.D. Cal. Jan. 12, 2012) (noting "substantial risk" of inadvertent disclosure); Great Lakes Dredge & Dock Co. v. Harnischfeger Corp., 734 F. Supp. 334, 336 (N.D. Ill. 1990) (disqualification may be justified to "preserve the public confidence in the fairness and integrity of the judicial proceedings").

## B. Relevancy of Confidential Information to This Litigation

Auto-Kaps also argues that the information disclosed during the Starblaster project was not relevant to the particular elements of the Clorox Smart Tube design. To support its motion for disqualification, Clorox must provide "specific and unambiguous evidence" to establish the relationship between the information received and the issues in the litigation. Kyocera Corporation, 2012 WL 4103811, at *8 (quoting Hewlett–Packard Company, 330 F. Supp. 2d at 1094). Clorox may not rely on "mere conclusory or ipse dixit assertions." Nikkal Indus., Ltd. v. Salton, Inc., 689 F. Supp. 187, 191 (S.D.N.Y. 1988).

Clorox has, without a doubt, provided such specific and unambiguous evidence here. To begin, the fact that Foster consulted on the very project that culminated in the bottle design at issue in this litigation provides a substantial relationship between the information he received and the issues in this litigation. See, e.g., Agfa-Gevaert, 2003 WL 233101783, at *1; Chamberlain Grp., Inc. v. Interlogix, Inc., No. 01 C 6157, 2002 WL 653893 (N.D. Ill. Apr. 19, 2002). Furthermore, this information was not merely available to Foster; the email exchanges make clear that confidential information was sent directly to Foster and that he consulted on the dip tubes and coupling mechanism contemplated in the confidential designs sent to him. These components are directly related to the technology at issue in the accused product, namely, whether the dip tube of the Smart Tube bottle "extend[s] from the open top of the container" and whether the coupling mechanism operates such that it couples with the mating arrangement "only if the container passageway is aligned with the pump cap passageway."

Upon reviewing the sealed documents provided by Clorox, which include communications between Foster and Clorox researchers, the record certainly supports finding that Foster was involved with the analysis and redesign of different Smart Tube bottle

7

prototypes. It is also clear that Foster consulted on designs from third parties, including from the third party whose design Auto-Kaps has conceded created the design of at least one Smart Tube bottle component. There is therefore a substantial risk that Foster may inadvertently disclose confidential information he acquired during his consulting work for Clorox while serving as Auto-Kaps' expert.

It is also not difficult to infer that Foster was given or exposed to confidential information relating to Clorox's strategy regarding its intellectual property. Foster was likely exposed throughout his consultancy to the goals and priorities for the Starblaster project, which Foster may inadvertently use to determine whether the Smart Tube bottle met certain claim limitations of the '743 Patent. For instance, the feedback and instruction from Clorox over the coupling mechanism or the dip tube may impact Foster's conclusions, even inadvertently, as to whether these features perform substantially the same function in substantially the same way as claimed, such that the Smart Tube bottle infringes the '743 Patent under the doctrine of equivalents.

Foster cannot be expected to catalogue information he received while consulting for Clorox on its design and to then compartmentalize confidential information from the rest of his extensive experience in the dispensing systems industry. This is particularly the case where the design of the Smart Tube's dispensing system is at the very heart of the litigation. Foster will necessarily rely on his decades of experience in the area of dispensing systems in order to determine whether the Clorox Smart Tube bottle infringes the '743 Patent. Part of that experience, however, occurred between approximately April 2009 and March 2011, during which Foster consulted with Clorox regarding the evolving design of the accused product. It would be impossible to expect Foster to separate the confidential information he acquired during the course of that consultation from his review of the project's final design as compared to Auto-

8

Kaps' patent. More importantly, it would be impractical for Foster to do so. Although Foster may not think at this time that any knowledge he gained at Clorox will be relevant, "the danger is that no one may know how the information he learned from [Clorox] may affect his opinion and [Foster] may inadvertently use confidential information." Alien Tech. Corp. v. Intermec, Inc., No. 3:06-CV-51, 2007 WL 4261972, at *2 (D.N.D. Nov. 30, 2007). An expert cannot build a Chinese wall in his own mind, despite his best efforts to do so. See Pellerin, 2012 WL 112539, at *3 (citing Alien Tech. Corp., 2007 WL 4261972, at *2) (agreeing that "the human brain does not compartmentalize information in this manner").

### C. Public Policy Considerations

Finally, public policy weighs in favor of disqualifying Foster. Although the movant bears the burden of establishing the elements supporting its motion for disqualification, Auto-Kaps has not presented evidence that would outweigh the public's interest in preserving judicial integrity. Plaintiff has offered no representation that Foster's expertise is rare, or that there are few experts on the topic of dispensing systems. Instead, Auto-Kaps essentially argues that it would be prejudiced because it has already hired Foster, and to disqualify him now would deprive Auto-Kaps of the benefit of Foster's services, for which he has already been paid. Although the Court recognizes the "not insignificant" amount of money spent on expert opinions, merely expending resources, however significant, to retain an expert does not establish prejudice, much less erase the risk of prejudice to the other party. Indeed, if it did, it would result in the very *fait accompli* that the law seeks to avoid.

Furthermore, there is no showing that Foster is an expert who is being deprived of his professional calling. To the contrary, Foster's declaration states that he decided to cease working on behalf of Auto-Kaps due to his belief that Clorox could "make [his] life miserable if [he]

9

continued working on behalf of Auto-Kaps." Certainly, Clorox would not be rewarded had it moved to disqualify only to intimidate Auto-Kaps' consultant; however, where Clorox has shown that Foster and Clorox had a confidential relationship, and that Foster received confidential information relevant to this litigation, the Court has no reason to doubt Clorox's motives in moving to disqualify Foster.

Having found Clorox has established the first two elements, there appear to be no countervailing concerns by Auto-Kaps or Foster to be weighed. See Bristol-Myers Squibb Co., 2000 WL 42202, at *5. The Court must therefore "protect the integrity of the judicial process by ensuring that experts do not use, even unwittingly, confidential information that they learned from a party in the course of an earlier engagement against that party in a later lawsuit." Gordon v. Kaleida Health, No. 08-CV-378S F, 2013 WL 2250506, at *5 (W.D.N.Y. May 21, 2013); see also Hinterberger v. Catholic Health Sys., Inc., No. 08-CV-380S F, 2013 WL 2250591 (W.D.N.Y. May 21, 2013) (quoting Kyocera, 2012 WL 4103811, at *8).

## CONCLUSION

Defendant's motion [39] to disqualify Foster from acting as plaintiff's expert in this litigation, and to strike his affidavit from plaintiff's submission in opposition to summary judgment, is therefore granted.

A status conference will be held on April 5, 2016 at 4:30 pm in Courtroom 8D South to discuss whether plaintiff has retained a different expert for the purposes of the summary

judgment motion, or whether it intends to rely on the plain, ordinary meanings of the limitation terms, which is what it indicated it would do at the premotion conference.

**SO ORDERED.**

                                                                                  U.S.D.J.

Dated:  Brooklyn, New York
         March 22, 2016