UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                                     :
  AUTO-KAPS, LLC,                                    :
                              Plaintiff,             :     **<u>MEMORANDUM DECISION AND</u>**
                                                     :     **<u>ORDER</u>**
               - against -                           :
                                                     :     15 Civ. 1737 (BMC)
                                                     :
  CLOROX COMPANY,                                    :
                                                     :
                              Defendant.             :
-------------------------------------------------------- X

**COGAN**, District Judge.

        Every person who has cleaned his home knows the problem that the simple invention at

the heart of this case addresses.  You have a bottle full of liquid spray.  When you get near the

bottom, you can't get the last part of the liquid to spray out of the bottle because the straw inside

can't make contact with the liquid, which has spread too thin along the bottom of the bottle.  You

try tilting the bottle, using short, sporadic squeezes, or unscrewing the cap to manipulate the

inside straw before screwing the cap back on so that the liquid will collect in one known corner

of the bottle.  But you still can't get it all.  You feel cheated, thinking that you have paid for

some product which the manufacturer knew you would not be able to use.  The products at issue

in this case seek to address this problem; the question before me on defendant's motion for

summary judgment is whether defendant's technology infringes plaintiff's patent.

        At issue are certain claims of U.S. Patent No. 7,490,743 ("the '743 patent"), entitled

"Dispenser Assembly."  The patent is directed towards a liquid dispenser assembly that

facilitates the ability to dispense all of the liquid in a dispenser, as well as the assembly of such

liquid dispensers.  Plaintiff Auto-Kaps, LLC alleges that defendant Clorox Company's

trademarked "Smart Tube" spray bottle infringes the claims of the '743 patent including, without

limitation, claim 1. I assume basic familiarity with the language of the patent claims and therefore will state the disputed claim language only as required to reach the legal conclusions on defendant's motion for summary judgment.

As is relevant here, claim 1 is an independent claim from which others derive. The claim covers a dispenser assembly consisting of, *inter alia*, a container with a passageway mounted to the inner side wall of the container, a cap with a pump mechanism, and a means for mounting the container and cap whereby fluid flows through the container passageway when the pump is used. I hold that defendant's accused device does not infringe claim 1 as a matter of law, and I grant summary judgment of non-infringement.

## BACKGROUND

Kenneth J. Herzog (the "applicant") filed his patent application for what would become the '743 patent with the Patent and Trademark Office ("PTO") on October 22, 2004. As part of the patent application that eventually became the final, approved patent, the applicant included exemplary illustrative figures, one of which is excerpted below:



In an Office Action dated April 17, 2006, the PTO rejected claim 1 of the patent application, as well as several others, as being anticipated by a patent filed in November 1995 by Richard K. Ho under U.S. Patent No. 5,464,129 (the "Ho patent"). The Office Action noted that the Ho patent discloses "a coupling arrangement arranged on the pump cap body and configured to detachably couple to the mating arrangement of the container only if the container passageway is aligned with the pump cap passageway, such that the container passageway sealingly engages the pump cap passageway in a fluid connection when the pump cap is mounted to the container . . . ." (references omitted).

In an Office Action Response, dated July 14, 2006, the applicant provided an amended claim 1 through a clarifying amendment, not a narrowing amendment. The applicant submitted that, contrary to claim 1 of his invention, "nowhere does [the Ho patent] teach, suggest, or disclose that" the cap of the pump head is configured to detachably couple to the neck "only if" the dip tube is aligned with pipe 26. In the Office Action Response, the applicant submitted that the "end of [the] dip tube . . . and pipe can be out of alignment (for example, 180° out of alignment) and [the] cap will still detachably couple to [the] neck." (references omitted).

According to the applicant, the coupling and mating arrangements of claim 1 of the '743 patent would therefore have "significant advantages" over those disclosed in the Ho patent because the applicant's invention "assures the alignment of the container passageway and the pump cap passageway as the pump cap is mounted to the container." The applicant stated that the Ho patent requires the dip tube and pipe be "purposely aligned before" mounting the pump head to the container, "making assembly more difficult." The applicant requested reconsideration and allowance of claim 1, in addition to the other rejected claims.

As evidenced in an Office Action dated October 5, 2006, the PTO rejected the applicant's argument, detailing the configuration of the Ho patent and stating that the coupling arrangement is detachably coupled to the mating arrangement only if the container passageway is aligned with the pump cap passageway. The applicant's July 14, 2006 amendment necessitated a new finding, and the PTO again rejected claim 1.

According to an Interview Summary of a telephone interview between the applicant and the PTO on February 8, 2007, the parties discussed claim 1 and the Ho patent once more:

> It was discussed that there was no structure from the reference and the language in claim 1[] that differentiates between [the '743 patent and the Ho patent]. It has been suggested by the [PTO] that the Applicant provide structure that will only permit attachment of the pump cap and container, so that the passageways are align[ed].

In an Office Action Response dated April 5, 2007, the applicant submitted an amendment to claim 1 and requested reconsideration of his patent application. The amendment included new language in claim 1, stating that the "pump passageway is non-axial relative to the pump mechanism," and adding new language to the coupling limitation that "the coupling arrangement and the mating arrangement are non-circular in shape such that the coupling arrangement and the mating arrangement are coupled only if the container passageway is aligned with the pump cap passageway," which the applicant argued made the device different than the Ho patent. The applicant again requested favorable reconsideration.

The new language worked. The applicant was granted the '743 patent on February 17, 2009. Plaintiff filed this infringement suit on April 1, 2015, alleging that the Smart Tube bottle infringes independent claim 1 of the '743 patent and several of its dependent claims.

## DISCUSSION

### I.     Legal Principles

"In approaching a motion for summary judgment of infringement or non-infringement, a district court must proceed 'with a care proportionate to the likelihood of its being inappropriate.'" Chem. Eng'g Corp. v. Essef Indus., Inc., 795 F.2d 1565, 1571 (Fed. Cir. 1986) (quoting D.M.I., Inc. v. Deere & Co., 755 F.2d 1570, 1573 (Fed. Cir. 1985)).

Summary judgment of non-infringement requires a two-step analytical approach, whereby the court (1) construes the claims of the patent to determine their meaning and scope and (2) then compares the properly construed claims against the accused device. See Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1304 (Fed. Cir. 1999) (citing Carroll Touch, Inc. v. Electro Mech. Sys., Inc., 15 F.3d 1573, 1576 (Fed. Cir. 1993)). Claim construction is a question of law exclusively for the courts to resolve, see Markman v. Westview Instruments, 52 F.3d 967, 970-71 (Fed. Cir. 1995), aff'd, 517 U.S. 370, 116 S. Ct. 1384 (1996), whereas determining whether a particular device infringes a properly construed claim is a question of fact usually within the jury's purview, see Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp., 149 F.3d 1309, 1315 (Fed. Cir. 1998).

Courts are not required to conduct a formal Markman hearing to construe a patent's claims, and a party may move for summary judgment at any time. Irrespective of whether a formal Markman hearing is conducted, several principles govern claim construction.

First, to construe a patent claim, a court analyzes the intrinsic evidence of record, which consists of the claims, the written description of the patent itself, and, if in evidence, the prosecution history. See Biovail Corp. Int'l v. Andrx Pharm., Inc., 239 F.3d 1297, 1300 (Fed. Cir. 2001) (citing Markman, 52 F.3d at 979). If the intrinsic evidence unambiguously describes

the scope of the patent, reliance on extrinsic evidence is improper. Id. (citing Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1583 (Fed. Cir. 1996)); see also Nazomi Commc'ns, Inc. v. Arm Holdings, PLC, 403 F.3d 1364, 1368 (Fed. Cir. 2005) (instructing courts to look to intrinsic evidence first). The claims are part of "a fully integrated written instrument," Markman, 52 F.3d at 978, and claims "must be read in view of the specification, of which they are a part," id. at 979. The specification "is always highly relevant to the claim construction analysis," and usually dispositive because "it is the single best guide to the meaning of a disputed term." Phillips v. AWH Corp., 415 F.3d 1303, 1315 (Fed. Cir. 2005) (quoting Vitronics, 90 F.3d at 1582).

Second, each claim of a patent must be interpreted consistently, and each claim should be given meaning. See Biovail Corp., 239 F.3d at 1300-01. Third, and lastly, disputed claim terms are given their ordinary and customary meaning, unless (1) a different meaning is clearly stated in the written description or the prosecution history, or (2) the term chosen lacks clarity such that there is no means by which the scope of the claim may be ascertained solely from the language used. See Johnson Worldwide Assoc., Inc. v. Zebco Corp., 175 F.3d 985, 990 (Fed. Cir. 1999).

Once a court has determined the scope of the patent's claims, it may grant summary judgment as a matter of law where "no reasonable fact finder could find infringement." Ethicon Endo-Surgery, 149 F.3d at 1315. Here, the parties only dispute the meanings of the limitations in claim 1, and therefore the question of literal infringement collapses into one of claim construction. See Athletic Alternatives, Inc. v. Prince Mfg., Inc., 73 F.3d 1573, 1578 (Fed. Cir. 1996).

Each limitation stated in a claim must be met for that claim to be infringed, which is referred to as the "all-elements" or "all-limitations" rule. Freedman Seating Co. v. Am. Seating Co., 420 F.3d 1350, 1358 (Fed. Cir. 2005). Infringement may be literal, or an accused device

may infringe a patent under the doctrine of equivalents.  See id. at 1357.  "Literal infringement

requires a patentee to prove by a preponderance of the evidence that every limitation of the

asserted claim is literally met by the allegedly infringing device."  Biovail Corp., 239 F.3d at

1302; see also Enercon GmbH v. Int'l Trade Comm'n, 151 F.3d 1376, 1384 (Fed. Cir. 1998).

Infringement may also be found under the doctrine of equivalents "if every limitation of

the asserted claim, or its equivalent, is found in the accused subject matter, where an equivalent

differs from the claimed limitation only insubstantially."  Ethicon Endo-Surgery, 149 F.3d at

1315 (internal quotation marks omitted).  "Whether equivalency exists may be determined based

on the insubstantial differences test or based on the triple identity test, namely, whether the

element of the accused device performs substantially the same function in substantially the same

way to obtain the same result."  TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc., 529 F.3d

1364, 1376 (Fed. Cir. 2008) (internal quotation marks omitted).  "Where the evidence is such

that no reasonable jury could determine two elements to be equivalent, district courts are obliged

to grant partial or complete summary judgment."  Warner-Jenkinson Co. v. Hilton Davis Chem.

Co., 520 U.S. 17, 39 n. 8, 117 S. Ct. 1040, 1053 n. 8 (1997).

Important to any doctrine of equivalents analysis is that the all-elements rule still applies:

"Each element contained in a patent claim is deemed material to defining the scope of the

patented invention, and thus the doctrine of equivalents must be applied to individual elements of

the claim, not to the invention as a whole."  Warner-Jenkinson, 520 U.S. at 29, 117 S. Ct. at

1049.  A plaintiff cannot categorically allege that the accused product accomplishes the same

result; the analysis must be limitation-by-limitation.  Further, an element of an accused product is

not, as a matter of law, equivalent to a limitation of the claimed invention if such a finding would

entirely "vitiate" the limitation.  Id. ("It is important to ensure that the application of the doctrine

[of equivalents], even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety.").  "[I]f a court determines that a finding of infringement under the doctrine of equivalents 'would entirely vitiate a particular claim[ed] element,' then the court should rule that there is no infringement under the doctrine of equivalents."  Lockheed Martin Corp. v. Space Sys./Loral, Inc., 324 F.3d 1308, 1321 (Fed. Cir. 2003) (quoting Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., 262 F.3d 1258, 1280 (Fed. Cir. 2001)).

## II.    The Language of Claim 1

Claim 1 is an independent claim on which other dependent claims may derive, and the independent claim includes within it a number of separate limitations.  Plaintiff alleges defendant has infringed claim 1 and certain of its dependent claims.  Claim 1 reads, in relevant part:

> 1.    A dispenser assembly, comprising:
>
> . . . at least one container passageway **[1] mounted on the inner surface** of the side wall and **[2] extending from the open top of the container** to a position proximate to the bottom of the container; and
>
> a pump cap . . . wherein the coupling arrangement [of the pump cap] and the mating arrangement [of the container] are non-circular in shape such that the **[3] coupling arrangement and the mating arrangement are coupled only if the container passageway is aligned with the pump cap passageway, such that the container passageway sealingly engages the pump cap passageway in a fluid connection when the pump cap is mounted to the container.**

Defendant argues that, as a matter of law, its Smart Tube bottle does not infringe the particular claim limitations, which are bolded and numbered above, specifically, that the dispenser assembly comprise (1) "at least one container passageway mounted on the inner surface of the side wall" (the "mounting" limitation); (2) a container passageway "extending from the open top of the container" (the "extension" limitation); and (3) a pump cap wherein the coupling arrangement of the pump cap and the mating arrangement are designed such that the

two "are coupled only if the container passageway is aligned with the pump cap passageway, such that the container passageway sealingly engages the pump cap passageway in a fluid connection when the pump cap is mounted to the container" (the "coupling" limitation).

Defendant moves for summary judgment of non-infringement as a matter of law, even though the Court has not held a <u>Markman</u> hearing on claim construction. The parties agree that "no claim construction is necessary to resolve this motion" because the Court can rely on the plain, ordinary meaning of the words in claim 1. Yet the parties disagree as to the plain, ordinary meaning of the very same words. This puts the Court in a precarious position because the parties' disagreement as to the terms means that some level of claim construction is necessary to decide this motion. The Court will therefore undertake limited claim construction to resolve this motion.

Defendant has moved for summary judgment on three claim limitations, each of which is found in independent claim 1. Consistent with the legal principles presented *supra*, for plaintiff's infringement claim to survive, the Smart Tube bottle must infringe each and every one of the limitations in claim 1; that is, if it does not infringe even one of these limitations, summary judgment is appropriate as a matter of law. Defendant's argument is that giving the limitations in claim 1 their broadest construction under the facts still permits the Court to determine that the Smart Tube bottle does not infringe the '743 patent, without the need to determine the exact metes and bounds of the claim as understood by a person with ordinary skill in the art and without the need to construe any other dependent claims. Plaintiff claims that genuine issues of material fact exist regarding whether the Smart Tube bottle infringes the relevant claim terms, that summary judgment should be denied, and that expert discovery should continue.

The complaint alleges that the Smart Tube bottle literally infringes all three of the above-specified limitations and infringes the mounting and extension limitations under the doctrine of equivalents.[1]

## III.  Claim Construction

### A.  The Mounting Limitation

The Smart Tube bottle does not infringe the '743 patent either literally or under the doctrine of equivalents.  There is no question that the limitation requires that the container passageway be "mounted on the inner surface of the side wall" of the bottle.  Moreover, the figures in the patent application all show container passageways mounted to the interior side wall of the container.  There is also no question that the passageway in the Smart Tube bottle is attached to the exterior of the container.  Not only do plaintiff's own illustrations of the accused bottle show that the passageway is mounted to the exterior wall, the Court's own inspection of the Smart Tube bottle shows that the tube is mounted to the exterior wall, as the tube protrudes from the exterior wall and there is some empty space between the tube and the exterior wall of the container.  I find that the Smart Tube bottle has a passageway mounted on the exterior of the bottle, which is the exact opposite of the literal limitation of a tube "mounted on the <u>inner</u> surface of the side wall" required by claim 1; accordingly, the mounting limitation cannot literally meet this limitation in claim 1, and "no reasonable fact finder could find infringement."  <u>Ethicon Endo-Surgery</u>, 149 F.3d at 1315.

---

[1] Although the parties had represented to the Court that the limitation terms were to be given their plain and ordinary meaning, such that expert testimony would not be required, plaintiff has submitted an expert declaration providing the plain and ordinary meanings of the limitations as they would be understood by a person having ordinary skill in the art.  Upon receipt of the plaintiff's opposition and its expert's declaration, defendant moved to disqualify the expert, David Foster, on the basis that he had worked for defendant and had specifically worked on the project that would eventually culminate in the Smart Tube bottle.  I granted the motion; however, defendant has consented to my considering the Foster declaration for purposes of deciding this motion for summary judgment only.

Plaintiff's attempt to persuade the Court that an inner-wall-mounted passageway is the same as an outer-wall-mounted passageway under the doctrine of equivalents is unavailing. Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." Warner-Jenkinson Co., 520 U.S. at 21, 117 S. Ct. at 1045. And while the doctrine of equivalents permits a court to look past insubstantial differences between the claim elements or limitations and the elements of the accused product, the doctrine cannot be used to entirely eliminate the limitations themselves. Warner-Jenkinson, 520 U.S. at 29, 117 S. Ct. at 1049.

Courts have recognized some tension between the doctrine of equivalents and the all-limitations rule: "It is important to note that when we have held that the doctrine of equivalents cannot be applied to an accused device because it 'vitiates' a claim limitation, it was not to hold that the doctrine is always foreclosed whenever a claim limitation does not literally read on an element of an accused device; such an interpretation of the 'all elements' rule would swallow the doctrine of equivalents entirely." DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 469 F.3d 1005, 1018 (Fed. Cir. 2006); see also Ethicon Endo-Surgery, 149 F.3d at 1317 (holding that a similar interpretation "would force the All Elements rule to swallow the doctrine of equivalents, reducing the application of the doctrine to nothing more than a repeated analysis of literal infringement" (footnote omitted)).

There is no set formula for a court determining whether a finding of equivalence would vitiate a claim limitation. Rather, a court "must consider the totality of the circumstances of each case and determine whether the alleged equivalent can be fairly characterized as an insubstantial change from the claimed subject matter without rendering the pertinent limitation meaningless."

Freedman Seating, 420 F.3d at 1359.  Therefore, courts have found that "any analysis of infringement under the doctrine of equivalents necessarily deals with subject matter that is 'beyond,' 'ignored' by, and not included in the literal scope of a claim."  Ethicon Endo-Surgery, 149 F.3d at 1317.  Moreover, the case law on the doctrine of equivalents makes it clear that "all claim limitations are not entitled to an equal scope of equivalents," whether as a result of the all-limitations rule, the prosecution history, or the "inherent narrowness of the claim language."  Moore U.S.A., Inc. v. Standard Register Co., 229 F.3d 1091, 1106 (Fed. Cir. 2000).  Further, "[b]ecause th[e] issued patent contains clear structural limitations, the public has a right to rely on those limits in conducting its business activities."  Sage Prods., Inc. v. Devon Indus., Inc., 126 F.3d 1420, 1425 (Fed. Cir. 1997).

I decline plaintiff's invitation to find that an inner passageway is the equivalent of an outer passageway.  To do so would render the limitation meaningless and award the patentee a claim that includes basically all passageways, whether mounted on the inner wall or exterior wall of the bottle, such that the limitation is entirely vitiated.  Simply put, an interior wall is no more the equivalent of an exterior wall as the "majority" is no more the "minority," as a matter of law.  Moore U.S.A., 229 F.3d at 1106 (holding that a claim to a mailing form requiring that strips of adhesive extend to "the majority" of the lengths of the longitudinal margin portions could not be met equivalently by an accused device with strips of adhesive that extended to only 47.8% of the length of the margin because a "minority" could not be a "majority" as a matter of law); see also Cooper Cameron Corp. v. Kvaerner Oilfield Prod., Inc., 291 F.3d 1317, 1321-22 (Fed. Cir. 2002) (finding that an assembly connection "above" two plugs cannot be the equivalent to a connection "between the two plugs"); Asyst Techs., Inc. v. Emtrak, Inc., 402 F.3d 1188, 1195 (Fed. Cir.

2005) (finding that "mounted" was substantially different from "unmounted" under the doctrine of equivalents).

Further, as a public policy consideration, plaintiff cannot seek to expand the scope of its patent to the detriment of the public, which acted in justifiable reliance on the language of the '743 patent. Just like the Federal Circuit found in Sage Products and Freedman Seating, "though elegant, the subject matter claimed by the ['743] patent involves relatively simple and well-known technologies," yet Auto-Kaps "chose to specifically limit the claims," and "[m]embers of the public were therefore justified in relying on this specific language in assessing the bounds of the claim." Freedman Seating, 420 F.3d at 1362; see also Sage Prods., 126 F.3d at 1425 ("Given a choice of imposing the higher costs of careful prosecution on patentees, or imposing the costs of foreclosed business activity on the public at large, this court believes the costs are properly imposed on the group best positioned to determine whether or not a particular invention warrants investment at a higher level, that is, the patentees."); Conopco, Inc. v. May Dep't Stores Co., 46 F.3d 1556, 1562 (Fed. Cir. 1994) (holding that the doctrine of equivalents "cannot be used to erase 'meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement.'").

For the foregoing reasons, I find that the Smart Tube bottle does not infringe the mounting limitation either literally or under the doctrine of equivalents.

### B. The Extension Limitation

I also find that plaintiff has failed to show that the Smart Tube bottle infringes the '743 patent based on the extension limitation. The limitation requires a container passageway "extending from the open top of the container." Just as the Federal Circuit has found to be a proper interpretation, I construe "top of the container" to mean the "highest point, level, or part

of" the container. <u>Sage Prods.</u>, 126 F.3d at 1423. In the same way that the mounting limitation cannot infringe literally, the extension limitation cannot infringe literally because the plain, ordinary meaning of "extending from the open top of the container" is that the passageway extends all the way from the highest point of the mouth of the bottle. In contrast, the passageway in the Smart Tube bottle begins approximately two inches below the top of the container, and it is unquestionable that a passageway that begins two inches below the open top of a container cannot infringe a claim limitation requiring that the passageway extend from the open top of the container. Further, looking at one of the exemplary embodiments in the patent, which the Court excerpted *supra*, it is clear that, on the '743 patent, the container passageway extends from the highest part of the container (in fact, the patent illustrates that the passageway begins just above the highest point of the container).

Moreover, Auto-Kaps has failed to present a persuasive doctrine of equivalents argument with respect to the extension limitation. No reasonable fact-finder can determine that a passageway that begins at the highest point of the open top of the container is the equivalent of a passageway that begins two inches below the open top of the container. And the Federal Circuit has rejected such an attempt to draw a similar equivalence between a limitation calling for an opening at the top of a container and an accused product with an opening recessed into the interior of the container. In <u>Sage Products</u>, the Federal Circuit affirmed the district court's grant of summary judgment of non-infringement under the doctrine of equivalents, first agreeing that the district court properly interpreted "top of the container body" to mean "highest point, level, or part of," and then, second, finding that the accused product was not equivalent to the claimed invention in that the slot on the accused product was located in the interior of the container rather than at the top of the container. 126 F.3d at 1423-24. The Federal Circuit concluded that a

finding of infringement under these circumstances would vitiate the "slot at the top of the container body" limitation. Id. at 1424-26.

Accordingly, I find that the Smart Tube bottle does not infringe the extension limitation in the '743 patent either literally or under the doctrine of equivalents.

### C. The Coupling Limitation

The prosecution history of claim 1 of the '743 patent specification is determinative of the scope of the coupling limitation. Although prosecution history may sometimes lack the clarity of a patent specification, see Inverness Med. Switz. GmbH v. Warner Lambert Co., 309 F.3d 1373, 1380-82 (Fed. Cir. 2002), it may also "often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." Phillips, 415 F.3d at 1317. Further, the scope of coverage of a claim may change where a patentee has argued the scope of his claim in order to overcome or distinguish a reference. See Elkay Mfg. Co. v. Ebco Mfg. Co., 192 F.3d 973, 979 (Fed. Cir. 1999).

Plaintiff asserts that "the 'only if' claim language at issue only makes sense if the spray trigger and cap are in alignment with the dip tube so that the Clorox Bottle is able to serve its intended purpose and dispense fluid." However, that argument is unconvincing because the "only if" language was precisely how the applicant differentiated the '743 patent from the Ho patent. As argued to the PTO, the '743 patent was to have significant advantages over the Ho patent because the Ho patent's dip tub could be "for example, 180° out of alignment" with the pipe, and the cap would "still detachably couple to [the] neck." Whereas the Ho patent required a user to "purposefully align[]" the dip tube and pipe before mounting the pump head to the

container, the invention in the '743 patent "assures the alignment . . . as the pump cap is mounted to the container."

Although the applicant here did not amend his claim to include the term "only if," he nevertheless argued its importance in distinguishing his invention from the Ho patent. "Arguments made during the prosecution of a patent application are given the same weight as claim amendments." <u>Elkay Mfg.</u>, 192 F.3d at 979. "Because it is the totality of the prosecution history that must be assessed, not the individual segments of the presentation made to the Patent and Trademark Office by the applicant, it is irrelevant whether [the applicant] relinquished this potential claim construction in an amendment to the claim or in an argument to overcome or distinguish a reference." <u>Id</u>. It is clear from the arguments made by the applicant to the PTO that the applicant intended the pump cap to mount to the container only when the pump cap passageway and the container passageway were connected, as it was an improvement over previous designs (such as the Ho patent) that did not require such a coupling.

This comports with the amended limitation in claim 1 that the coupling arrangement and the mating arrangement be "non-circular" in shape, so that the two cannot be connected in infinite ways, but rather, only in ways that permit the sealing engagement. The prosecution history reveals that the non-circular shape was intended as a way to distinguish the '743 patent from the Ho patent and to further show that the sealing engagement is necessary before the pump cap mounts to the container.

The resulting language of claim 1, as amended, states as much. The arrangements have a non-circular shape "such that the coupling arrangement and the mating arrangement are coupled only if the container passageway is aligned with the pump cap passageway." The phrase "such that" indicates the result that follows from the various pieces working together as they do in the

patent.  The arrangements are non-circular in shape for the purpose of achieving what follows; that is, the arrangements have a non-circular shape for the purpose of preventing the pump cap passageway and container passageway from being out of alignment when the coupling arrangement and mating arrangement are coupled.

Because the terms must be given the same meaning throughout the claim, the purpose and result of the particular coupling is "such that" the passageway in the container and the passageway in the pump cap link and the dispenser can dispense the liquid.

The prosecution history is consistent with the patent specification and, in fact, I would have come to the same conclusion about the scope of the coupling limitation even if there had been no prosecution history available.  The description of the invention embodies this logic as well, relying on Figure 1, excerpted *supra*, as an exemplary illustration:

> The oval shape of the coupling and mating arrangements **160**, **165** permits pump cap **105** to be detachably coupled to container **110** in only one of two positions, so that open end **155** of passageway **150** sealingly engages with one of the passageways **130***a*, **130***b*.  However, it should be appreciated that, although FIG. 1 shows oval-shaped coupling and mating arrangements **160**, **165**, coupling and mating arrangements **160**, **165** may be of any shape that permits a "keying" of couple arrangement **160** with mating arrangement **165**, such that open end **155** of passageway **150** sealingly engages with at least one of passageways **130***a*, **130***b*.

As a whole, the patent specification of the '743 patent elucidates the purpose of the coupling arrangement so that the passageways would always be consistently and effortlessly coupled when the pump cap was mounted to the container.

Lastly, the term "only if" signals that it is followed by a condition or prerequisite that is necessary as opposed to merely sufficient.  For example, in the statement, "I will take the subway to work <u>only if</u> it is too cold to walk," it must be too cold to walk before I will take the subway.  I will not take the subway in any other situation.  By contrast, in the statement, "I will take the subway to work <u>if</u> it is too cold to walk," I will take the subway to work when it is too

cold to walk, but I may also take the subway in other situations, even when it is not too cold to walk.

Under the same logical construction, the formulation of the coupling limitation using "only if" makes it clear that the sealing engagement between the container passageway and the pump cap passageway is a necessary condition to the coupling arrangement of the pump cap and the mating arrangement. If the two arrangements do not create a sealing engagement, the two arrangements will not couple.

The prosecution history, the patent itself, and logic belies any argument that the scope of the coupling arrangement does not narrowly require a sealing engagement to mount the pump cap to the container.[2] Plaintiff attempts to work around this result by stating that "[t]here is no benefit to being able to mount a spray trigger and cap to a dispenser that cannot spray." But what plaintiff intends to accomplish by focusing on the claim's intended purpose to dispense fluid is unclear.

In arguing literal infringement on the coupling limitation, plaintiff's assertion begs the question and urges the Court to work backwards from the invention's purpose to determine the scope of the claim in, not surprisingly, a broad enough way that it embodies the Smart Tube bottle's configuration. Plaintiff essentially asks this Court to gloss over the meaning of "only if," or to read it out of the claim entirely. I decline to do so.

---

[2] Plaintiff does not allege that the Smart Bottle infringes the coupling limitation under the doctrine of equivalents. Nor could it. "When a claim amendment creates prosecution history estoppel with regard to a claim element, there is no range of equivalents available for the amended claim element." Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd., 234 F.3d 558, 569 (Fed. Cir. 2000) (en banc). The application of the doctrine of equivalents to that claim element is completely barred, and that bar applies "regardless of whether the amendment is explained or unexplained, if the amendment narrows the scope of the claim for a reason related to patentability." Biovail Corp., 239 F.3d at 1303 (quoting Festo Corp., 234 F.3d at 576). As noted above, the prosecution history of the coupling limitation makes clear that the '743 patent was an improvement on the Ho patent, whereby under the '743 patent, the alignment of the pump cap passageway with the container passageway was a necessary prerequisite to mounting the pump head to the container. The coupling limitation was then amended to include a non-circular shape to assure that alignment; therefore, there can be no infringement under the doctrine of equivalents for this claim.

Moreover, as a practical matter, I disagree that there is no benefit to coupling the pump cap to the container in such a way that it cannot spray. There could be many reasons as to why a bottle would be designed such that the "container passageway sealingly engages the pump cap passageway in a fluid connection when the pump cap is mounted to the container." One reason may be that a bottle contains potentially hazardous or poisonous liquid (say, bleach). By allowing the spray trigger and cap to connect to the dispenser in such a way that it cannot spray, a purchaser can configure the bottle, when not in use, to protect children or others who may gain access to the bottle, as a safety device, much like the safety on a handgun.

Aside from whatever the considerations may have been in designing a bottle to permit a coupling configuration whereby the bottle cannot spray, plaintiff's argument here is all the more odd because the parties do not dispute that the Smart Tube bottle has such a configuration. That is, plaintiff seems to be commenting on the design purpose of the Smart Tube bottle rather than on the construction of the patent claims. If anything, by this commentary, plaintiff has undercut its infringement argument by asserting such a configuration would not be beneficial and acknowledging the difference between the Smart Tube bottle, which permits such a coupling, and its own '743 patent, which does not.

Whatever reason plaintiff may have had for raising such an argument, it is not the Court's prerogative to read the claim a particular way because the product would not be as useful if read otherwise. "[C]laim construction is a function of the words of the claim not the purpose of the invention." Source Vagabond Sys. Ltd. v. Hydrapak, Inc., 753 F.3d 1291, 1301 (Fed. Cir. 2014) (internal quotation marks omitted). The term "only if" was intended to have meaning, and this Court will not read it out of the patent. The coupling limitation is construed to mean, at its broadest scope, that the pump cap passageway and the container passageway are sealingly

engaged when the coupling arrangement and the mating arrangement are coupled.  If the pump

cap passageway and the container passageway are <u>not</u> sealingly engaged, the coupling

arrangement and the mating arrangement do not couple.

In sum, I find that it is indisputable that the Smart Tube bottle does not literally infringe

the coupling limitation in the '743 patent as I have construed it.

## IV.    Defendant's Counterclaims for Declaratory Judgment

Although I have dismissed plaintiff's claim that defendant's Smart Tube bottle does not

infringe the '743 patent, defendant's counterclaims for declaratory judgment remain.  A district

court has discretion to dismiss as moot arguments related to invalidity once the court has found

no infringement.  <u>See</u> <u>Phonometrics, Inc. v. N. Telecom Inc.</u>, 133 F.3d 1459, 1468 (Fed. Cir.

1998).

In this case, it appears that there is no longer a case or controversy once summary

judgment is entered dismissing plaintiff's complaint because defendant's basis for bringing its

claims for declaratory relief was that it had been sued for infringement.  Further, defendant has

not expressed any intention of prosecuting its counterclaims or made any mention of them in its

summary judgment briefing.  However, in the patent context, while a finding of non-

infringement may moot declaratory judgment counterclaims on unenforceability or invalidity,

such counterclaims are not moot as a matter of law, and a live controversy may exist.  <u>See, e.g.,</u>

<u>Benitec Australia, Ltd. v. Nucleonics, Inc.</u>, 495 F.3d 1340, 1345 (Fed. Cir. 2007).  In assessing

the existence of a live controversy, the constitutional requirements for standing still remain, and

here, with plaintiff's complaint dismissed, defendant has not alleged an injury-in-fact or risk of

imminent injury to warrant this Court's jurisdiction.  <u>See, e.g.,</u> <u>Teva Pharm. USA, Inc. v.</u>

<u>Novartis Pharm. Corp.</u>, 482 F.3d 1330, 1338 (Fed. Cir. 2007); <u>see also</u> <u>Prasco, LLC v. Medicis</u>

Pharm. Corp., 537 F.3d 1329, 1338 (Fed. Cir. 2008) (finding that "[t]he mere existence of a potentially adverse patent does not cause an injury nor create an imminent risk of an injury").

Further, a party challenging the validity of a patent always bears the ultimate burden of showing that an actual controversy supports the action, regardless of whether the challenge is brought via a freestanding action or a counterclaim. See Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 96, 113 S. Ct. 1967, 1975 (1993) ("A party seeking a declaratory judgment of invalidity presents a claim independent of the patentee's charge of infringement."). Accordingly, within 7 days of the date of this Order, defendant is ordered to file a letter advising whether it intends to prosecute its invalidity and non-infringement counterclaims, including, if it does, the jurisdictional basis for such prosecution now that I have granted summary judgment dismissing plaintiff's complaint. If it does not intend to continue the prosecution, the Court will dismiss the counterclaims without prejudice.

**CONCLUSION**

Defendant's motion for summary judgment is granted. Defendant is directed to file a letter within 7 days containing the advice set forth above.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       November 29, 2016